# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOHNNY LACY, JR.,**
      **Plaintiff,**

      v.                                                                                               **Case No. 09-cv-925**

**CAPTAIN DONALD STRAHOTA,**
      **Defendant.**

## DECISION AND ORDER

Plaintiff, Johnny Lacy, Jr., a Wisconsin state prisoner, is proceeding pro se on a claim that defendant, Captain Donald Strahota, placed him in transition status at Waupun Correctional Institution because he was transferred there from Wisconsin Secure Program Facility, in violation of the Equal Protection Clause of the Fourteenth Amendment. Defendant has filed a motion for summary judgment, which will be addressed herein.

## I. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## II. FACTS[1]

### A. Defendant's Proposed Findings Of Fact

Plaintiff transferred to Waupun Correctional Institution (WCI) from the Wisconsin Secure Program Facility (WSPF) on May 6, 2008, leading to the events at issue in this case. Defendant, Captain Donald Strahota, is the Security Director at WCI. He operates and oversees a procedure governing new inmate integration into WCI called "Inmate Receiving, Orientation, and Transition Period." A portion of this policy calls for certain inmates to go through a transition period before joining the general inmate population (the "Transition Program").

**1. Wisconsin Secure Program Facility**

WSPF, formerly known as the Supermax Correctional Institution, is Wisconsin's highest security inmate facility. WSPF originally housed only inmates with behavioral problems at other institutions, and continues to house such inmates. These inmates are transferred to WSPF because of behaviors exhibited at alternative prison sites which jeopardized the safety and security of the facility, staff, and/or other inmates. WSPF

---

[1] Facts are taken from Defendant's Proposed Findings of Fact and from the Affidavit of Johnny Lacy, Jr.

endeavors to provide these inmates with programming which can reduce their level of risk, and then monitor that reduction of risk in an effort to return them to a general population setting. In addition to these troubled offenders, WSPF currently houses inmates in general population confinement.

**2. Waupun Correctional Institution and the Transition Program**

WCI is a general security facility that sometimes receives inmates from other institutions, including WSPF. The Transition Program is a policy seeking to facilitate a successful adjustment for new inmates to WCI. WCI implemented this program because of security concerns that arose when high risk, segregated, and special needs inmates transferred straight into the general inmate population. Under the Transition Program, high risk, special needs, and previously segregated inmates are required to participate in a period of "Transition" before joining the general inmate population at WCI. Under the current policy, all inmates transferring into WCI who are in some form of segregation status at their prior institution immediately prior to their transfer will automatically be placed in Transition at WCI. Among those subject to the Transition Program are inmates who transfer to WCI from segregated status at WSPF.

Transition generally involves a gradual, short-term process of giving previously segregated, special needs, or high risk inmates increased freedom, responsibility, and personal contact as they transition to the general inmate population at WCI. The aim of WCI's Transition requirement is to assist the inmate's familiarization back into the mainstream. The Transition Program is not a punishment. Its aims are solely remedial and preparatory. The goal is a smooth adjustment to living in a general population cell hall with hundreds of other inmates. The policy seeks to protect existing inmates from newly

3

transferred inmates who have a history of trouble or special needs, while also protecting and coming along-side the transferring inmate to ensure a successful integration.

Inmates in the Transition Program are housed in a separate wing of WCI, the North Cell Hall (NCH). Inmates are limited in their movement, and all movement is under staff escort. They take their meals in their cell and are offered exercise in the NCH outdoor recreation area. Transition Program inmates are offered showers in the NCH secured showers. They also have visits reviewed individually. Inmates in Transition are reviewed weekly by a Special Review Team to assess their progress. Upon review and approval by the Special Review Team, the restrictions are gradually lifted as inmates demonstrate progress. As inmates demonstrate their ability to function successfully in a larger cell hall with less supervision, inmates will progress out of the Transition Program. Because of the individualized assessment, some inmates progress faster through the Transition Program than others.

WCI believes the Transition Program has been effective because it allows staff to more closely monitor inmates, which improves safety by limiting opportunities for violence or conflict. Because of its effectiveness, WCI has increased the scope of the Transition Program. Initially, only inmates transferring from certain institutions, including WSPF (before it housed general population inmates), were subject to the Transition Program. Now, WCI's standard policy requires all high risk, special needs, and previously segregated inmates transferring in from any institution to participate in the Transition Program before joining the general inmate population at WCI.

**3. Transition Programs at Other Wisconsin Institutions**

Though such a program is not required, other institutions in Wisconsin have programs similar to WCI's Transition Program for segregated, high risk, and/or special

4

needs inmates. Other institutions requiring a similar Transition period include Taycheedah Correctional Institution, Milwaukee Secure Detention Facility, Stanley Correctional Institution, and Redgranite Correctional Institution.

**4. Lacy's Participation in the Transition Program**

Other than a period from April 3, 2008 to April 24, 2008, Lacy was in segregated confinement of one form or another during the entire time he was at WSPF, a period spanning from December 2001 to May 2008. Immediately prior to his transfer to WCI, Lacy was in Temporary Lock-Up status—a segregated status—at WSPF. Pursuant to WCI's policy for inmates coming from segregated statuses at WSPF, Lacy was immediately and automatically placed in Transition status. Lacy remained in Transition status from his arrival at WCI on May 6, 2008 until June 6, 2008.

**B. Affidavit Of Johnny Lacy**

> Plaintiff avers:
>
> I addressed a correspondence to the Security Director at WCI informing him that I was not supposed to be "transitioning back into the general population" because I was already in the general population. The Security Director wrote me back and stated that "I was placed in Transition based on my behavior at the previous institution." I had no idea of what he was talking about. (See Ex. 2.) At the previous institution I had not had a conduct report for over a year and I was already in the general population.
>
> I wrote the Security Director again and tried to explain to him that I hadn't had any behavioral problems at WSPF and I didn't deserve to be in transition, especially since I had seen two individuals who were on the very same range I was on at WSPF in the general population. (See Ex. 5, Affidavit of Alphoncy Dangerfield, Sr; see also Ex. 3.) I then wrote a letter to the WCI Warden, Michael S. Thurmer, on May 23, 2008, expressing the violation of my due process rights in being placed in transition. He wrote me back May 30, 2008, upholding the security director's position in placing me in transition. (See Ex. 4.)
>
> . . .

>       I am informed the reason who I was placed in transition is because "they" (I don't know who "they" are), have to see how we act around a lot of inmates again.

(Lacy Aff. ¶¶ 6-10, 15.)

### III. ANALYSIS

Defendant contends that WCI's Transition Policy is rationally related to the state's interest in the security and well-being of inmates by ensuring a smooth transition from segregation status into a general population setting and that, consequently, plaintiff's compulsory participation in the Transition Program was rationally related to the legitimate state interest of ensuring the safe and successful integration of newly transferred inmates. Plaintiff contends that he is proceeding under a "class of one" theory, because he has been intentionally treated differently from all others similarly situated and there is no rational basis for the difference in treatment. According to plaintiff, he was placed in Transition based on some "mysterious previous behavior" at WSPF and not because he was in segregation prior to transfer.

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Often an equal protection violation occurs when a state actor draws distinctions among people based on a person's membership in a "suspect" class. Martin v. Shawano-Gresham Sch. Dist., 295 F.3d 701, 712 (7th Cir. 2002). Suspect classes include race, alienage, and national origin. Vision Church v. Vill. of Long Grove, 468 F.3d 975, 1000 (7th Cir. 2006). Another typical equal protection challenge is based on denial of a fundamental right. Id. Fundamental rights include freedom of speech and religion. Id. With both suspect classes and denials of fundamental rights, the government's justification for the regulation must satisfy the strict scrutiny test to pass muster under the Equal Protection Clause. Id. In the

absence of deprivation of a fundamental right or the existence of a suspect class, the proper standard of review is rational basis. Vision Church, 468 F.3d at 1000-01. Rational basis review requires the plaintiff to prove that (1) the state actor intentionally treated plaintiff differently from others similarly situated; (2) this difference in treatment was caused by the plaintiff's membership in the class to which he belongs; and (3) this different treatment was not rationally related to a legitimate state interest. Smith v. City of Chicago, 457 F.3d 643, 650-51 (7th Cir. 2006) (citation omitted).

It is undisputed that WCI's main interest with respect to the Transition Program is institutional security and the well-being of its prisoners. WCI aims to ensure a smooth transition from segregation into a general population setting. Specifically, WCI seeks to protect existing inmates from newly transferred inmates who have a history of trouble or special needs, while also protecting the transferring inmate to ensure a smooth transition. This purpose is, without question, a legitimate state interest. See Al-Alamin v. Gramely, 926 F.2d 680, 686 (7th Cir. 1991). Thus, the court finds that the Transition Program does not violate the Equal Protection Clause because it is rationally related to a legitimate state penological interest.

Plaintiff contends that he is proceeding on a class-of-one equal protection claim because he was singled out for placement in the Transition Program without a legitimate reason since he arrived at WCI from WSPF's general population, not from segregation. Traditionally, the Fourteenth Amendment's Equal Protection Clause is understood as protecting members of vulnerable groups from unequal treatment attributable to the state. LaBella Winnetka, Inc. v. Vill. of Winnetka, — F.3d —, 2010 WL 5367749, at *2 (7th Cir. Dec. 29, 2010) (citing Bell v. Duperrault, 367 F.3d 703, 707 (7th Cir. 2004)). However, it also proscribes state action that irrationally singles out and targets an individual for

discriminatory treatment as a so-called "class-of-one." Id. (citing Reget v. City of La Crosse, 595 F.3d 691, 695 (7th Cir. 2010)); see also Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). All equal protection claims, regardless of the size of the disadvantaged class, are based on the principle that, under "like circumstances and conditions," people must be treated alike, unless there is a rational reason for treating them differently. LaBella Winnetka, 2010 WL 5367749, at *3 (citing Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 601-02 (2008)). A plaintiff states a class-of-one equal protection claim by alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. (quoting Olech, 528 U.S. at 564).

Plaintiff avers that he was in general population at WSPF before transferring to WCI and that therefore the Transition Program did not apply to him. Defendant avers that plaintiff was in segregated confinement "in one form or another" during the entire time he was at WSPF except for a period from April 3, 2008 to April 24, 2008. Defendant further avers that immediately prior to plaintiff's transfer to WCI, he was in Temporary Lock-Up status, a segregated status, at WSPF and pursuant to WCI's Transition Program, plaintiff was immediately and automatically placed in Transition status at WCI, where he remained from May 6, 2008 until June 6, 2008.

It is undisputed that plaintiff was incarcerated at WSPF from December 2001 to May 2008. Although the parties dispute whether plaintiff was in segregated housing immediately prior to the transfer, it is undisputed that plaintiff was transferred to WCI after having just spent seven years at WSPF and that the great majority of that time was in segregated status. Placing plaintiff in the Transition Program certainly seems reasonable and prudent. The Transition Program is remedial and preparatory; it is not punishment.

In any event, the orderly operation of prisons has generally been committed to prison officials, not the federal court. Such matters are within the peculiar expertise of corrections officials and, therefore, the courts will generally accord great deference to their expert judgment, unless there is substantial evidence to argue against it. See Bell v. Wolfish, 441 U.S. 520 (1979); see also Woods v. O'Leary, 890 F.2d 883 (7th Cir. 1989). An equal protection claim requires proof that the actions complained about were undertaken for reasons which were wholly unrelated to any legitimate state objective. Esmail v. Macrane, 53 F.3d 176, 180 (7th Cir. 1995). Plaintiff has not raised a factual issue that he was placed in the Transition Program for a non-security reason. As such, plaintiff has not demonstrated that defendant lacked a rational basis in placing him in the Transition Program, and his class-of-one claim fails.

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (Docket #21) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 16th day of March, 2011.

/s_____
LYNN ADELMAN
District Judge